THE STATE OF FLORIDA, *ex rel.* ROY H. STRINGER, *Plaintiff in Error,* v. H. LESLIE QUIGG, CHIEF OF POLICE OF MIAMI, FLORIDA, AND HENRY R. CHASE, SHERIFF OF DADE COUNTY, *Defendants in Error.*

En Banc.

Opinion Filed January 23, 1926.

198

*Bart A. Riley,* for Plaintiff in Error;

*Rivers Buford,* Attorney General, for the State.

STRUM, J.—Plaintiff in error, hereinafter called the petitioner, was arrested by authority of a warrant of extradition issued by the Governor of Florida upon demand of the Governor of Minnesota. Shortly after his arrest, petitioner sued out a writ of *habeas corpus,* in support of which he contends that his arrest and detention are unlawful because he has not had a hearing before the Governor either prior or subsequent to the issuance of the warrant of extradition, to which hearing petitioner contends he is entitled, even after the executive warrant of extradition has issued.

The Circuit Judge before whom the writ of *habeas corpus* was returnable, upon hearing, dismissed the petition. Writ of error was allowed, but petitioner's application for the fixing of a supersedeas bond was denied by the Judge of the Circuit Court and petitioner was remanded to custody. The cause came before this Court upon a transcript of the record, accompanied by a motion for an order fixing the terms and conditions of a supersedeas bond and releasing petitioner from custody pending determination of the writ of error. The purpose of the motion is to secure the enlargement of the prisoner upon bail pending determination of the writ of error, and meanwhile to stay his removal from the State of Florida. An order has been heretofore entered denying the motion, and the matter now comes before us upon petition for rehearing.

We will first consider whether petitioner is entitled to be enlarged upon bail pending the determination of the writ of error here.

If the authority to grant bail in such cases exists it must arise either by virtue of the Constitution or laws of the United States, the Constitution or laws of Florida, or from inherent authority in the courts independent of the express provisions of organic or statutory law.

No right to bail exists at common law in favor of one held in custody under warrant of extradition, because extradition is not a proceeding according to the course of the common law. Proceedings in extradition are *sui generis*, finding their origin and existence, as between different nations, wholly in treaty obligations, and as between the states of this Union wholly by virtue of the provisions of the Constitution of the United States and effectuating statutes. The Constitution of the United States, Article IV, Sec. 2, provides:

"A person charged in any state with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on demand of the executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the Crime."

The Act of Congress of February 12, 1793, re-enacted as Sec. 5278, U. S. Rev. Gen. Stat., Sec. 5278, Comp. Stat. 1901, p. 3590, provides:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from Justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within six months from the time of the arrest, the prisoner may be discharged * * * ."

The Florida Statute, Sec. 6182, Rev. Gen. Stat. 1920, as amended by Chap. 10129, Laws of 1925, provides:

"The Governor, when demand shall be made of him by the executive of any other state or terri-

tory of any fugitive from justice, in the manner
prescribed by the Act of Congress approved Feb-
ruary 12th, 1793, and upon payment of the fee of
five dollars hereinafter provided for, shall cause
said fugitive to be arrested and secured, either by
making public proclamation or by issuing a war-
rant to that effect, as he may deem most expedient,
under his hand and seal of the State, directed to
all and singular the sheriffs of this State, therein
commanding them to arrest the fugitive therein
named; and it shall be the duty of any sheriff upon
receiving such order forthwith to execute the
same. In every event where the Governor of this
State shall be called on by the executive of any
other State, territory, or country for the extradi-
tion of any fugitive from justice found in this
State, there shall be assessed and collected as a pre-
requisite to the issuance of the extradition papers
by the Governor for the removal of the fugitive
from this State, the sum of five dollars, which shall
be paid to the State Treasurer to be credited to
the general revenue fund of the State of Florida.
Every person arrested as fugitive from justice,
shall for a bailable offense, have the right to give
bond, in an amount to be fixed by the county judge
of the county, and be released from custody there-
on; pending a hearing before the Governor on the
requisition.''

Authority for interstate rendition of fugitives by extra-
dition emanates solely from the power delegated to the
Federal Government by the Constitution of the United
States. In this State, such proceedings are wholly depend-
ent upon the organic and statutory law just quoted. Leg-
islation as to interstate rendition of fugitives being within

the power of Congress, the Federal law upon that subject is paramount to state Constitution and Statutes. Ex parte Massee, 79 S. E. Rep. 97; 46 L. R. A. (N. S.) 781. When the executive warrant of rendition has been issued the fugitive is then held solely upon that authority. His detention is not for the purpose of trying him in the courts of this State, for he is charged with no offense against our laws, but he is apprehended and detained for the sole purpose of rendition to the demanding state. The executive warrant of rendition is *prima facie* evidence that the prisoner is a fugitive from justice. Kenney v. State, 88 Fla. 354; 102 South. Rep. 547; Munsey v. Clough, 196 U. S. 364; 25 Sup. Ct. Rep. 282; 49 Law. Ed. 515. But the prisoner may test the legality of such a warrant by *habeas corpus.* Hyatt v. State of New York, 188 U. S. 691; 47 Law. Ed. 657; Robb v. Connelly, 111 U. S. 624; 28 Law. Ed. 542. The power of the court or judge in such a proceeding in *habeas corpus* is necessarily limited, however, to a consideration of whether the prisoner in fact falls within the provisions of the Federal Statute; that is, whether he is subject to extradition, and whether the Federal Constitution and Laws have been complied with. For example, the court may ascertain whether the prisoner is the person charged, and if so, whether he is substantially charged with a crime against the laws of the demanding state (State v. Allen, 83 Fla. 655; 92 South. Rep. 155); whether he is a fugitive from justice, and whether the warrant shows that he was bodily in the demanding state at the time offense was committed. Kuney v. State, *supra;* Ex parte Thompson, 96 Atl. Rep. 102; State v. Masse, 79 S. E. Rep. 97; 46 L. R. A. (N. S.) 781. It follows, of course, that if the Federal laws have not been complied with, the prisoner must be released, unless subject to detention upon other process.

The Courts of this State have no power to determine either the innocence or guilt of an offender against the criminal laws of another state, (Kurtz v. State, 22 Fla. 36, 45) and our courts therefore should not enlarge on bail a person substantially charged with an offense against the laws of that other state, though he may be arrested here for prosecution there, unless the power to grant bail in such a case reposes either in the authority whereby such person is here arrested, or unless it is found in the Constitution or Laws of Florida in connection with the incidental use of the process of this State to test the lawfulness of the extradition proceedings, or unless it inheres in the courts of this state independent of the constitutional or statutory provisions. The Declaration of Rights of the State of Florida, Sec. 9, provides:

> "All persons shall be bailable by sufficient sureties, except for capital offenses, where the proof is evident or the presumption great."

This provision of the Constitution of Florida, one of the greatest bulwarks of personal liberty, should not be narrowly or illiberally construed. On the other hand, it should not be enlarged beyond its plain sphere of operation. The quoted provision of our Declaration of Rights, except as to those persons expressly excluded by its terms, unquestionably affords the right to bail to all persons who are charged with or who may be convicted of crime under the laws of the State of Florida, but in the present state of the law we do not regard its provisions as applicable to one who is charged with an offense under the laws of another state, and who is before the courts of this State for the sole purpose of determining *the lawfulness of his detention* under an executive warrant of extradition, under which latter process this State holds him for rendition to the demanding State, *and for no other purpose.* Extra-

dition laws are enacted upon the presumption that the demanding State will accord the fugitive his right to bail, and all other legal rights. When a fugitive is held under executive warrant of extradition, it is entirely appropriate and just that his right to bail be tested by the laws of the demanding State, where he is charged with crime, and where his guilt or innocence must be judicially determined, and not by the laws of the asylum State which holds him solely for the purpose of rendition.

In construing a similar provision of the Constitution of Texas, the Court of Criminal Appeals of that State has held:

"Nor can that provision in our Bill of Rights which provides that 'all prisoners shall be bailable by sufficient sureties' be invoked to successfully sustain the action (habeas corpus), because, as said by our Supreme Court, by the terms 'all prisoners' it was not meant to require all prisoners under all circumstances to be bailed, but it must refer to a class of prisoners, each and all of whom shall be bailed except as therein provided. Ex parte Ezell, 40 Texas, 451. This provision in our organic law must be construed with and be controlled by that provision in the Constitution of the United States, which is the supreme law of the land, and which provides that 'a person charged in any state with treason, felony, or other crime, who shall flee from justice and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime.' Const. U. S., Artl. 4, Sect. 2. If upon arrest under a warrant of extradition bail is allowable, the Federal Constitution is set at naught,.

and delivery in the State having jurisdiction of the offence would have its price, regulated generally by the amount of the bail-bond, whereon could be given at all, and a fundamental provision which was intended to apply to all classes of citizens would be restricted to the poor and unfortunate who were not able to furnish bail. Such cannot be the proper construction of the two constitutions." Ex parte Erwin, 7 Texas Ct. Crim. App. 288.

And in an able opinion upon this question, *inter alia*, the Court of Chancery of New Jersey has said:

"Our Constitution provides that all persons, shall, before conviction, be bailable by sufficient sureties, except for capital offenses, where the proof is evident or the presumption great. Article 1, Sec. 10. But this, like the provision that the right of trial by jury shall remain inviolate (article 1, sec. 7), which does not enlarge the right, is not intended to extend the right of bail to cases where it did not previously exist." Ex parte Thomson, 96 Atl. Rep. 102.

The general rule in *habeas corpus* proceedings is well established that pending a final hearing in the court of original jurisdiction, or pending the determination of the cause upon writ of error, the judge of court may admit the prisoner to bail, (State ex rel. Gallat v. Allen, 82 Fla. 149; 89 South. Rep. 398) but the provisions of the Constitution and Statutes of Florida granting bail do not control where the prisoner is arrested upon executive warrant of extradition, authority for which, as previously stated, emanates solely from the Federal Constitution and effectuating Statutes, and is held, not for trial in our courts, but for the sole purpose of rendition to the demanding

State for trial there, circumstances which plainly distinguish this situation from that under consideration in State ex rel Gallat v. Allen, 82 Fla. 149; 89 South. Rep. 398, where the prisoner was held solely by process of this State, for trial—and possible conviction—in the courts of this State of an offense committed against the laws of this State. Although all other process under which a prisoner may be held must yield to the writ of *habeas corpus,* when issued, so that the prisoner is then held solely by the latter writ, and although that be the effect of the writ of *habeas corpus* in extradition proceedings, even after issuance of the executive warrant, the provisions of the Constituiton and laws of Florida, under which bail was granted in the Gallat case, will not avail the prisoner in extradition cases, after issuance of the executive warrant, because those provisions do not extend to one in that status. His right to bail, if any, is fully preserved to him in the State in which he stands charged with crime. It is therefore apparent that one in the status of this petitioner is not entitled to enlargement upon bail as a right incident to his detention under the writ of *habeas corpus.*

A bare perusal of applicable organic and statutory Federal law, hereinabove quoted, discloses the significant absence of a provision for bail in the extradition proceeding proper, as distinguished from the proceedings upon the writ of *habeas corpus,* although the Federal statute makes express provision for discharge of the fugitive, after six months, if no officer of the demanding state appears to take him in custody. If the fugitive be taken into custody prior to the issuance of the executive warrant he is then held solely under state process, and the principles announced in State ex rel. Gallat v. Allen, *supra,* might or might not apply. But upon the issuance of the executive warrant, the proceeding is thereby divested of its former

intrastate status and becomes an interstate matter, governed entirely by paramount Federal law. That the Constitution and Statutes of the United States do not forbid bail is not enough, for the authority to admit to bail in the extradition proceeding proper, like the authority to apprehend, must be found in the express provisions of applicable organic or statutory law, unless our courts possess that authority as an inherent power.

In this particular, principles of international extradition are similar to those of interstate extradition. In a case of international extradition the Supreme Court of the United States has said:

"The demanding government, when it has done all that the treaty and the law requires it to do, is entitled to the delivery of the accused on the issue of proper warrant, and the other government is under obligation to make the surrender, an obligation which it might be impossible to fulfil if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand, and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment. And the same reasons which induced the language used in the statute would seem generally applicable to release pending examination." Wright v. Henkel, 190 U. S. 40; 47 Law. Ed. 948. See also In re: Carrier, 57 Fed. 578.

We are aware that in Wright v. Henkel, *supra,* the Supreme Court of the United States further said:

"We are unwilling to hold that the Circuit Courts (of the United States) possess no power in respect of admitting to bail other than as specifically vested by statute, or that, while bail should

not ordinarily be granted in cases of foreign extradition, those courts may not in any case, and whatever the special circumstances, extend that relief.''

The latter language however should be interpreted in connection with that first quoted hereinabove from the same case, and if it be that state courts in issuing writs of *habeas corpus* to test the legality of the custody of the fugitive who is held under an executive warrant of extradition, possess inherent power, independent of statute, to deal with the custody of the fugitive, after executive warrant has issued, that power is derived, not from jurisdiction incidental to the extradition proceedings under existing Federal laws, but from the inherent power and duty of all courts to regulate and control the use of its own process in all cases not otherwise regulated by applicable and controlling law. Such a power, in connection with writs of *habeas corpus* sued out in extradition proceedings after issuance of the executive warrant, would be exercised very rarely, and only in the most extreme cases, such, for example, as In re Mitchell, 171 Fed. 289, and when exerted could be effectually exercised by regulating the form and manner of custody of the prisoner, as distinguished from releasing him from custody on bail.

It therefore follows that after issuance of the executive warrant, a fugitive should not be enlarged upon bail either pending a final hearing by the court or judge before whom the writ of *habeas corpus* is returnable, or pending the determination of a writ of error in an appellate court. From and after the service of the writ of *habeas corpus*, the prisoner should be retained in custody by the court pending a final hearing upon the writ of *habeas corpus* in the court of original jurisdiction, or pending the determination of a writ of error. The form and manner of such custody is usually for determination of the court or judge

before whom the writ of *habeas corpus* is returnable until issuance of the writ of error, after which it is a matter within the control of the appellate court, but enlargement upon bond, however secure or coercive that undertaking may be, does not detain the fugitive in the *custody of the court*.

The courts of Connecticut take the opposite view, basing their position largely upon the last quoted expression of the Supreme Court of the United States in Wright v. Henkel, *supra*, as well as upon the effect of certain statutory provisions of that state. See Winnich v. Reilly, 123 Atl. Rep. 440; Farrell v. Hawley, 61 Atl. Rep. 502. Upon the same authority, Judge Hand of the U. S. District Court, Southern District of New York, allowed bail upon a writ of *habeas corpus* in extradition proceedings. In re Mitchell, 171 Fed. 289. The latter, however, was a very extraordinary and unusual case. And in Ex parte Thaw, 209 Fed. 954, the District Judge seems to have decided categorically that the prisoner was entitled to bail, basing his view upon the circumstance that the prisoner was charged with a misdemeanor only. In Ex parte Thaw, 209 Fed. 56, the executive warrant of extradition had not been issued, and although reference was made to bail, the prisoner was apparently placed in the custody of keepers. In Roberts v. Reilly, 116 U. S. 80; 29 Law. Ed. 544, and in Ex parte Reggel, 114 U. S. 642; 29 Law. Ed. 250, cited by the petitioner here, the Report disclosed that the prisoner was apparently admitted to bail pending determination of writ of error to the judgment in *habeas corpus,* but the correctness of the procedure was not decided by the court in either of those cases.

But so far as we have been able to find, other courts, with marked uniformity, have denied bail to a fugitive from justice, in extradition proceedings, after issuance of the warrant of extradition, although the fugitive sought

bail incidentally to a writ of *habeas corpus* brought to test the legality of his detention under the executive warrant, and we regard their position as correct, since any inherent power of the courts in such cases to deal with the custody of the fugitive may be fully exercised by appropriate regulation of the form and manner of his custody. State v. Massee, 79 S. E. Rep. 97; 46 L. R. A. (N. S.) 781; Ex parte Thompson, 96 Atl. Rep. 103; State ex rel. Rheinstrom v. Ronald, 179 Pac. Rep. 843; In re Carrier, 57 Fed. 578; Hobbs v. State, 22 S. W. Rep. 1035; In re Foye, 57 Pac. Rep. 825; In re: Clark, 9 Wend. (N. Y.) 212; Ex parte Erwin, 7 Tex. Ct. of App. 288; Ex parte Wall, 38 South. Rep. 628; 8 Enc. & Pr. 821; 25 C. J. 270.

It is well established that the courts of the asylum state may inquire, within recognized limits, into the legality of the detention of a prisoner who is held upon an executive warrant of extradition. Hyatt v. State of New York, 188 U. S. 691; 47 Law Ed. 657; Robb v. Connelly, 111 U. S. 624, 28 Law Ed. 542. Upon the service of a writ of *habeas corpus* sued out for that purpose, and the production of the body of the person in whose behalf the writ issued, the executive warrant of extradition under which the prisoner was originally held is suspended. Thereafter, and until the writ of *habeas corpus* is *finally* disposed of, the prisoner is detained, not by the extradition process, but by authority of the writ of *habeas corpus,* and his custody and safe keeping are entirely under the control and direction of the court before which the writ of *habeas corpus* is pending. Such custody may be effectuated by confining the prisoner, or by such other form of custody as may be considered adequate by the court. Barth v. Clise, 12 Wall. (U. S.) 400; 20 L. Ed. 293. A prisoner when enlarged upon bail, however, is not in the custody of the court within the meaning of that expression as herein used. He is then in the custody of his bondsmen.

If the court or judge before whom such writ of *habeas corpus* is returnable adjudges the executive warrant sufficient and the detention lawful, the effect of the final order or judgment, when entered, is to remand the prisoner to the custody from which he was taken by operation of the writ of *habeas corpus.* Under Sec. 3580, Rev. Gen. Stat. 1920, the prisoner is entitled to a writ of error so that he may secure a review of that order by the appellate court. The writ of error, when perfected, operates to transfer the cause to the appellate court. The writ of *habeas corpus* is therefore still pending, being before the appellate court on writ of error. Its effect as the sole process under which the prisoner is held continues, and the custody of the prisoner passes to the control and direction of the appellate court as a necessary incident to its jurisdiction of the cause on writ of error. For the same reasons that the extradition process was suspended by the original issuance of the writ of *habeas corpus,* such process remains suspended until *final* disposition of the writ of *habeas corpus* on writ of error. It follows that the practical effect of such writ of error, when perfected, is to stay the removal of the prisoner from the asylum state pending final determination of the writ of *habeas corpus* upon writ of error. An earlier removal of the prisoner would be incompatible with the primary purpose of the writ of *habeas corpus* in such cases, namely, a determination of the legality of the executive warrant of extradition; and in instances where the appellate court adjudges the executive warrant illegal, such premature removal of the prisoner would in effect defeat the jurisdiction of the appellate court by depriving it of the means of enforcing its judgment when rendered. But as we have seen, there is no present authority for enlarging the prisoner upon bail while the cause is under consideration upon writ of error.

Rehearing denied.

BROWN, C. J., AND WHITFIELD, ELLIS AND TERRELL, J. J., concur.

BUFORD, J., not participating.